# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CITIBANK GLOBAL MARKETS, INC., D/B/A SMITH BARNEY<br><br>Plaintiff<br><br>v.<br><br>LUIS FERNÁNDEZ RAMÍREZ; ALFER REALTY & DEVELOPMENT CORP; CASEN, INC.; CENTER COMMERCIAL & REALTY CORP; CENTRAL PLAZA CORP; COMMONWEALTH PROMOTERS, INC; FM COMMERCIAL AND REALTY, INC.; NANTI CORP.; and OGIMA INVESTMENTS CORP;<br><br>Defendants | CIVIL NO.   06-1641(JAF)<br><br>RE:<br><br>DECLARATORY JUDGMENT AND BREACH OF CONTRACT<br><br>CIVIL RICO, BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTY, FRAUD, DAMAGES<br><br>DEMAND FOR JURY TRIAL |

## ANSWER TO COMPLAINT AND COUNTERCLAIM

TO THE HONORABLE JUDGE JOSÉ A. FUSTE
CHIEF UNITED STATES DISTRICT JUDGE

COME NOW the defendants through the undersigned attorneys respectfully allege and pray as follows:

1. The allegations contained in paragraphs 1, 2, 3, 4, 5 and 7 of the complaint are admitted.

2. Of the allegations contained in paragraph 6 of the complaint, it is denied that co-defendant Luis Fernández-Ramírez (hereinafter referred to as Mr. Fernández Ramírez") "acted at all times as the representative and or agent for all the Defendant Corporations in relation with the facts herein". The other allegations contained in paragraph 6 of the complaint are admitted.

3. The allegations contained in paragraphs 8, 9, and 10 of the complaint are denied as stated.

4.      With respect to the allegations contained in paragraph 11 of the complaint, it is averred that the document referred to as a "Settlement Agreement and Release" does contain a confidentiality clause, the specific wording of which arises from the document itself.

5.      As drafted, the allegations contained in paragraph 12 of the complaint are denied. It is admitted, the above notwithstanding, that Smith Barney sent to Co-Defendant Mr. Fernández Ramírez several checks but only after Mr. Fernández Ramírez had notified Smith Barney that the document entitled "Settlement Agreement and Release" was void and had no legal validity.

6.      The allegations contained in paragraph 13 of the complaint are denied as drafted. The above, notwithstanding, it is admitted that the defendant corporations did file a complaint before the Court of First Instance of Puerto Rico, San Juan Part under the caption entitled <u>Alfer Realty & Development Corp., et. al. v. Citibank Global Markets Inc.</u>, Civil No. KAC 2006-2621(803). Reference is made to the above-entitled complaint for a determination of the actual allegations made in said complaint and the remedies requested therein.

7.      The allegations contained in paragraph 14 of the complaint are denied as drafted. It is admitted that the complaint filed by the corporate defendants in the local court, did include a copy of the "Settlement Agreement and Release" as an exhibit.

8.      The allegations contained in paragraph 15 of the complaint are denied.

9.      The allegations contained in paragraphs 16, 17 and 18 of the complaint are admitted.

**FIRST CAUSE OF ACTION**

10.     The herein appearing parties incorporate by reference the allegations contained in paragraphs 1 through 9 of this answer in response to the allegations contained in paragraph 19 of the complaint.

11.     The allegations contained in paragraphs 20 and 22 of the complaint are admitted.

12.     The allegations contained in paragraph 21 of the complaint are denied.

13. The allegations contained in paragraph 23 of the complaint require no answer inasmuch as said allegations are a conclusion of law. However, if a responsive pleading to such allegations is deemed necessary, such allegations are denied.

## SECOND CAUSE OF ACTION

14. In response to the allegations contained in paragraph 24 of the complaint, the herein appearing parties incorporate by reference its answers contained in paragraphs 1 through 13 of this Answer.

15. The allegations contained in paragraphs 25 and 27 of the complaint are denied.

16. The allegations contained in paragraph 26 of the complaint are admitted.

17. The allegations contained in paragraphs 25 through 33 of the complaint are conclusions of law that do not require a responsive pleading.

## THIRD CAUSE OF ACTION

18. The herein appearing parties incorporate by reference in response to the allegations in paragraph 34 of the complaint its answers numbered 1 through 17 in this responsive pleading.

19. The allegations contained in paragraph 35 of the complaint are denied as drafted. It is admitted that on or about February 17, 2006 Co-Defendant Mr. Fernández Ramírez signed a document prepared and drafted by the plaintiff.

20. In response to the allegations contained in paragraph 36 of the complaint, it is averred that the herein corporate defendants filed a complaint against Smith Barney in the courts of the Commonwealth of Puerto Rico. All other allegations contained therein are denied.

21. Of the allegations contained in paragraph 37 of the complaint, it is admitted that a copy of the document drafted by the herein plaintiff entitled "Settlement Agreement and Release" was included as an exhibit in the local complaint filed by the corporate defendants. All other allegations contained therein that were not expressly admitted are denied.

22. The allegations contained in paragraph 38 and 39 of the complaint are denied. It is admitted that the corporate defendants as well as the individual defendant have refused to comply with the "Settlement Agreement and Release" for good and valid legal reasons.

23. The allegations contained in paragraph 39 of the complaint are denied.

## AFFIRMATIVE DEFENSES

24. As drafted, the complaint fails to state a valid cause of action against the corporate defendants or the individual defendant.

25. The corporate defendants never agreed to be a party to the document drafted by the herein plaintiff and entitled "Settlement Agreement and Release".

26. The document drafted by the herein plaintiff entitled "Settlement Agreement and Release" was procured by the herein plaintiff through fraud, deceit and "dolo" and thereby said document has no binding effect and does not arise to the level of a legally binding obligation.

27. In procuring the signature of the herein individual defendant, the herein appearing plaintiff violated fiduciary duties to all defendants.

28. The herein plaintiff does not have clean hands and, therefore, is estopped from asserting the causes of action that it pretends to assert.

29. The damages claimed by the herein plaintiff are speculative and uncertain and, therefore, not recoverable pursuant to the laws of the Commonwealth of Puerto Rico.

30. Through its dealings with the herein defendants, the plaintiff has acted in bad faith and has attempted to take advantage of the herein defendants.

31. Prior to plaintiff's execution of the document entitled "Settlement Agreement and Release" which was drafted by the plaintiff, the plaintiff was well aware that the individual defendant had repudiated the document as been a fraud and, therefore, not binding.

32. There is no good or valid consideration or cause for any obligation alleged to have been undertaken by the herein corporate defendants.

33. The filing of the document entitled "Settlement Agreement and Release" as an exhibit in the local court by the herein corporate defendants is privileged and does not breach any duty of said corporate defendants towards the plaintiff herein.

34. Any of plaintiff's alleged damages was not proximately caused by the defendants herein.

35. Plaintiff's alleged damages were caused by plaintiff's own negligence or its tortuous conduct toward the defendants.

36. Plaintiff has not mitigated damages.

37. Plaintiff's alleged damages cannot be recovered pursuant to the Puerto Rican Doctrine of "Absorción de Culpa".

## COUNTERCLAIM

Pursuant to Fed. R. Civ. P. 13(a), Defendants hereby present the following counter claims:

### I.
### FIRST CAUSE OF ACTION
### (Civil RICO - Racketeering and Fraud)

38. The Racketeer Influenced and Corrupt Organizations Act (RICO0, 18 U.S.C. §§ 1961-1968, provides at § 1964(c) that any person injured in his business or property by reason of a violation of § 1962 may sue therefore and shall recover threefold the damage he sustains. Section 1962 makes it unlawful for any person to conduct or participate in the conduct of the affairs of an enterprise through a pattern of racketeering activity.

39. Plaintiff and/or its official agents participated in a pattern of racketeering activity to defraud Defendants and has caused injury in an amount in excess of $4 million by, *inter alia*, deceitfully and fraudulently charging commissions regarding Defendants' investment accounts. At

all times material hereto, Plaintiff and/or its officers knew or had reason to know that the charged commissions regarding Defendants' investment accounts transactions were fraudulent and were being made to defraud Defendants. Said transactions are in excess of two thousand (2,000).

40. The fraudulent pattern of racketeering encompass the sale, purchase and/or exchange of commodities in interstate commerce. These actions occurred in the District of Puerto Rico by Plaintiff with the intent to defraud Defendants. These actions as fully described in the statement of RICO Facts ("predicate acts"), that were committed through the use of commercial or private mail carrier and/or wire transfer in interstate commerce in the United States of America resulting in violations of 18 U.S.C. §§ 1341, 1343 and 1346, and subsequently traveled in interstate commerce through the U.S. Banking System permitting Plaintiff to avail itself by devising a scheme to launder and defraud money, all in violation of 18 U.S.C. § 1956.

41. All of the corporate Defendants maintained investment accounts with Plaintiff, most of which were opened in 2002.

42. On or about April 11, 2003, Juan Carlos Hernández, Vice-President of Investments for Plaintiff, wrote to Co-defendant Mr. Fernández Ramírez to inform that a $0.10 per share commission would be applied to all transactions regarding the investment accounts of Defendants. On June 5, 2003, Rafael Colón-Ascar, as General Manager of plaintiff's local branch, informed that in all accounts maintained by defendants and counter-claimants, the commissions to be charged would be computed on the basis of ten cents (.10) per share. On August 1, 2003, Hernández, as Vice-President of Plaintiff, informed Mr. Fernández Ramírez that he was willing (referring to plaintiff) to further reduce the commissions to three (.03) cents per share. The offer was immediately accepted by Mr. Fernández Ramírez on behalf of the counter-claimants corporations. As a matter of fact and during a pertinent portion of the current year, plaintiff has been charging defendants commissions computed at three (.03) per share's basis. Such should be the figure used in computing the amounts owed to counter-claimants.

43. In February 2006, co-defendant Mr. Fernández Ramírez was informed that defendants' investment accounts with plaintiff were defrauded by deceitfully and fraudulently charging erroneous commissions resulting for plaintiff's benefits and, thus, increasing plaintiff's profit margin.

Notwithstanding the fact that plaintiff acquired knowledge of its Vice-President's fraudulent acts, plaintiff did not notify promptly said fraudulent scheme to the counter-claimant's President. Instead, plaintiff retained the unlawful excessive commissions for itself. To further compound its illegal acts, plaintiff continued charging interests on the margin accounts that were unlawfully inflated due to the then Vice-President' illegal acts.

44. On or about the first days of February, plaintiff communicated to counter-claimants that, due to an internal accounting "glitch" (as the term was used by plaintiff's senior officer). Defendants were entitled to a substantial refund for an overcharge of transaction commissions in their accounts.

45. Plaintiff informed defendants that it would calculate the refund owed. Subsequently, plaintiff revealed that they would refund $947,128.71 in compensation for the overcharge of transaction commissions of defendants' accounts. This amount was certified by plaintiff as the correct amount owed for the overcharges in the transactions.

Nevertheless, when defendants requested the documentation that supposedly supported such calculation, plaintiff was reluctant to provide it and, in fact, initially denied defendants' request to obtain a copy. Said documentation was eventually provided shortly before a release instrument drafted by plaintiff's attorneys was presented to Mr. Fernández Ramírez for execution.

46. Thereafter, on February 17 and only a short time after Plaintiff provided the documentation to attempt to sustain its erroneous refund calculations, Co-Defendant, Mr. Fernández Ramírez, acting under Plaintiff's complete assurance of accuracy, executed a "Settlement and Release Agreement" in where Plaintiff represented that the sum of $947,128.71

accurately reflected the variance between the standard commissions and the actual commissions charged to Defendants. Accordingly, Plaintiff agreed to pay Defendant, Mr. Fernández Ramírez, said sum in exchange for a release of liability of any action that he may have against Plaintiff for any claim arising out of Defendants' investment accounts with Plaintiff.  Notwithstanding any statement made in said agreement, Co-defendant Mr. Fernández Ramírez was not even required to execute the release on behalf of the other corporate defendants.[1]

47. Subsequently, on February 20, 2006, Co-Defendant, Mr. Fernández Ramírez, contacted Plaintiff requesting that the "Settlement and Release Agreement" subscribed by him be held in abeyance due to the fiduciary duty owed to him and until Plaintiff's calculation could be revised and the more than 2,000 transactions involved examined with due care.

48. On February 27, 2006, in light of Plaintiff's failure to respond to the February 20 communication, Co-Defendant, Mr. Fernández Ramírez, again contacted Plaintiff to request an official position regarding his request to hold in abeyance the settlement and release agreement. In addition, Defendant, Mr. Fernández Ramírez, expressed that he had good reason to believe that the computations carried out by Plaintiff were erroneous and would prove to be substantially higher.

49. Thereafter, on the afternoon of February 27, Co-Defendant, Mr. Fernández Ramírez, received a communication dated February 23, 2006 by Oreste R. Ramos, Esq. indicating that Plaintiff would be glad to furnish the information necessary to confirm that the amount agreed to in the "Settlement and Release Agreement" conforms with the analysis made by Plaintiff to establish any variance between standard commissions and the amounts charged as commissions to Defendants' accounts.

50. In response to said communication, Co-Defendant, Mr. Fernández Ramírez, on March 6, 2006, wrote to Atty. Ramos. In said letter, Mr. Fernández Ramírez clarified that Plaintiff's

---

[1]Despite of repeated defendant's requests, a purported executed copy of the release agreement, was not sent to defendants' until April 2006.

calculations were erroneous since it calculated the variance based on the "standard commission" versus Plaintiff's suggested rate instead of the $0.10 or $0.03 rate extended to Defendants' accounts.[2] In addition, Fernández Ramírez confirmed the conversation he had with Atty. Ramos on February 17, and prior to signing the "Settlement and Release Agreement" in which he indicated that he was signing the agreement relying on the reiterated assurances of the accuracy of the computation made by Plaintiff's officers.

51. Notwithstanding, it is evident that said assurance was not true and that Co-Defendant, Mr. Fernández Ramírez signed the "Settlement and Release Agreement" without the proper full and fair disclosure owed to counter-claimants under the fiduciary relationship existing with Plaintiff.

52. Accordingly, Co-Defendant Mr. Fernández Ramírez was erroneously induced into accepting a promise of payment significantly below the true amount owed. Moreover, Plaintiff knowingly retained information from Defendants violating the full and fair disclosure required in a fiduciary relationship and inducing Mr. Fernández Ramírez to compromise and release it from responsibility while defrauding defendants' investment accounts.

## II.
## PATTERN OF RACKETEERING ACTIVITY
## "THE PREDICATE ACTS" [3]

53. The predicate act of fraud and racketeering activity. Plaintiff from on or about May 6, 2002 to January 30, 2006 conducted in excess of two thousand (2,000) transactions devising and/or intending to devise a scheme and artifice to defraud Defendants by obtaining

---

[2] It should be clarified that the term "standard commissions" or "SB Suggested Rate" was fiction of the imagination of plaintiff's officers, since said term had never been agreed upon by the parties, who had specifically agreed on a commission level of ten cents per share and subsequently on three cents per share, as previously described in detail.

[3] Due to the voluminous number of transactions, Defendants have summarized all the transactions stated herein and include a spread sheet with this complaint as an attachment to this section.

Defendants' money and/or property by means of false or fraudulent pretenses, representations and/or fraudulent charges unlawfully obtaining a monetary benefit by overcharging transaction commissions on Defendants' accounts with Plaintiff. The predicate act of fraud and racketeering encompass the sale, purchase and/or exchange commodities in interstate commerce and utilized the use of commercial or private mail carrier, wire transfer all in interstate commerce in the United States of America resulting in violations of 18 U.S.C. §§ 1341, 1343 and 1346, and subsequently traveled in interstate commerce through the U.S. Banking System permitting Plaintiff to avail itself by devising a scheme to launder and defraud money all in violation of 18 U.S.C. § 1956.

### III.
### INJURY AND CASUAL NEXUS

54. The injury sustained by Defendants is directly related to the fraud and representations made by Plaintiff to Defendants. The fraudulent acts, scheme, and pattern of deceit and racketeering by Plaintiff resulted in the unlawful monetary availment of Plaintiff at Defendants' detriment.

### IV.
### SECOND CAUSE OF ACTION
### (Common Law Breach of Fiduciary Duty)

55. Defendants re-aver ¶¶ 4 thru 15 and further state that Plaintiff's actions constitute a serious breach of fiduciary duty. See 7 U.S.C.A. § 25.

56. As a broker, Plaintiff occupied a position of trust and confidence with defendants; therefore, plaintiff owes defendants the highest duty of loyalty and fidelity.

57. Notwithstanding, Plaintiff and/or its officials engaged in fraudulent investment activity that directly violated this relationship and resulted in a significant monetary loss in excess of $4 million for Defendants.

## V.
## THIRD CAUSE OF ACTION
### (Common Law Fraud)

58.     Defendants re-aver ¶¶ 4 thru 15 and further state that Plaintiff's actions constitute fraud. See also 7 U.S.C.A. § 25.

59.     It shall be unlawful for a commodity trading advisor to employ any device, scheme, or artifice to defraud any client or to engage in any transaction, practice, or course of business which operates as fraud or deceit upon any client. See also 7 U.S.C.A. § 6o.

60.     Notwithstanding, Plaintiff and/or its officials knowingly engaged in fraudulent investment scheme that directly defrauded Defendants resulting in a significant monetary loss in excess of $4 million for Defendants.

## VI.
## FOURTH CAUSE OF ACTION
### (Breach of Contract / Damages for Breach of Contract)

61.     Defendants re-aver ¶¶ 4 thru 15 and further states that Plaintiff's actions constitute a breach of contract.

62.     A contract exists from the moment one or more persons consent to bind himself or themselves, with regard to another or others, to give something or to render some service.  P.R. Laws Ann. tit. 31, § 3371.

63.     A contractual relationship existed between Plaintiff and Defendants in where in Plaintiff would charge a $0.10 or $0.03 per share commission on all transactions regarding Defendants' investment accounts.

64.     Notwithstanding, Plaintiff breached this contractual relationship on more than two thousand (2,000) occasions by charging Defendants amounts over the established $0.10 or $0.03 per share commission. Said breach of contract resulted in a significant monetary loss in excess of $4 million for Defendants.

## VII.
## SPECIAL DAMAGES

65.     Defendants re-aver ¶¶ 4 thru27 and further states that the conduct of Plaintiff is so egregious and scandalous that there need to be exemplary damages assess by this Court to punish Plaintiff for the wrongfulness of its actions. Thus, defendants specifically request that this Court grant common law special damages for the punitive conduct and acts of Plaintiff.

## VIII.
## DEMAND FOR JURY TRIAL

66.     Defendants, pursuant to fed. R. Civ. P. 38(b), herewith respectfully demand trial by Jury.

## IX.
## RELIEF REQUESTED

WHEREFORE, Defendants respectfully request that the Court enter judgment in its favor and against Plaintiff as follows:

a.      Declaring that Plaintiff and/or its officials committed a fraudulent scheme as define by the RICO Act defrauding Defendants of at least $4million. Therefore, and pursuant to the provisions of the RICO Act said damage should be trebled to an amount of $12 million.

b.      Declaring that Plaintiff and/or its officials breached its fiduciary duty to Defendants which resulted in a significant monetary loss in excess of $4 million.

c.      Declaring that Plaintiff and/or its officials knowingly engaged in fraudulent investment scheme that directly defrauded Defendant resulting in a significant monetary loss in excess of $4 million.

d.      Declaring that Plaintiff and/or its officials breached this contractual relationship on more than two thousand (2,000) occasions by charging Defendants amounts over the established $0.10 or $0.03 per share commission. Said breach of contract resulted in a significant monetary loss in excess of $4 million.

e.   Declaring that Plaintiff's conduct and actions were so egregious and scandalous that damages amounting to $8 million be imposed as punitive award.

f.   Ordering Plaintiff to pay the costs and attorney fees incurred in this case and any further relief as the Court may deem just and reasonable.

I hereby certify that on September 22, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

At San Juan, this 22nd day of September, 2006.

By:   s/ Rubén T. Nigaglioni
Rubén T. Nigaglioni, USDC-PR 11990
Attorneys for Defendant
**Nigaglioni & Ferraiuoli Law Offices P.S.C.**
P.O. Box 195384
San Juan, Puerto Rico 00919-5384
Tel. (787)765-9966   Fax: (787)751-2520
ruben@nf-legal.com
notices@nf-legal.com